# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KENNETH HIGHFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0501-WS-MU |
| | ) |
| GREDE II, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 37). The Motion has been extensively briefed (*see* docs. 38, 41, 42, 43-1, 46), and is now ripe for disposition.

**I.  Nature of the Case.**

This action arises from injuries sustained by plaintiff, Kenneth Highfield, as a business invitee on the premises of defendant, Grede II, LLC. In particular, Highfield fell from a raised platform adjacent to Grede's shipping office, resulting in severe leg injuries and other medical complications. In his First Amended Complaint (doc. 15), Highfield asserted purely state-law claims against Grede on theories of negligence (*i.e.*, that Grede negligently maintained an unsafe area of its premises where Highfield was conducting business and thereby created an unreasonable risk of harm); wantonness; negligent/wanton design of shipping office area; an AEMLD claim (directed at Grede as the designer, builder, or manufacturer of the stairs, platform and landing); negligent/wanton installation or repair of the stairs, platform and landing; and negligent/wanton inspection.[1] Notwithstanding these different permutations of claims asserted,

---

[1]  Even though Highfield's claims are brought exclusively under Alabama law, federal subject matter jurisdiction in this removal action is properly predicated on the diversity provisions of 28 U.S.C. § 1332. The well-pleaded facts before the Court demonstrate that Highfield and Grede are of diverse citizenship, and that the amount in controversy exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs.

this case is at its core a premises liability action predicated on the notion that Grede negligently or wantonly allowed a dangerous condition to exist at its shipping office, as a result of which Highfield fell and sustained injuries.

## II.   Factual Background.[2]

At all relevant times, Kenneth Highfield was employed as a commercial truck driver. (Doc. 15, ¶ 5.) On January 16, 2015, Highfield arrived in Brewton, Alabama from Franklin, Kentucky to pick up a load of auto parts at a processing facility owned and/or operated by defendant Grede II, LLC. (*Id.*, ¶¶ 5-6; Highfield Dep. (doc. 41, Exh. 8), at 49.) Highfield had never previously been to the Grede plant in Brewton, or to any other Grede facility anywhere else. (Highfield Dep., at 49.) He arrived at Grede's premises at approximately 9:15 a.m. (*Id.*) Upon doing so, Highfield parked his truck and walked to the receiving window to check in and sign paperwork. (*Id.* at 50.)

The configuration and layout of Grede's premises are of critical importance to the pending Rule 56 Motion. Since 2011, Grede's shipping office was located in a converted guard shack placed alongside the docks where drivers made pickups and deliveries. (Carraway Dep. (doc. 41, Exh. 1), at 17-18.) The shipping office (which was clearly marked by signage on the property) featured a window that a shipping clerk would open to exchange paperwork and otherwise interact with drivers. (*Id.* at 72-73.) There was only one way for drivers to access the shipping office and complete their paperwork at the Grede facility. They had to walk across the yard and climb a set of ten metal stairs. (*Id.* at 108; doc. 41, Exh. 3.) At the top of the steps was

---

[2]   The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. … Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

a large landing made of steel grate. (Doc. 41, Exh. 4.) To reach the shipping window, drivers would step up from the landing onto a small raised platform (also constructed of steel grate), located directly under the shipping window. (*Id.*) By standing on that small platform, truck drivers were positioned in such a manner that they could reach through the shipping window, speak with the shipping clerk, and sign paperwork on a small clipboard/shelf provided by Grede. (Carraway Dep., at 71-72, 106.) There was no other means for drivers to interact with the shipping clerk and exchange shipping paperwork with Grede; rather, they were required to stand on the small platform raised from the landing adjacent to the shipping office. (*Id.* at 101, 106-08; Peters Dep. (doc. 41-7), at 26, 31-34.)[3] According to Highfield, he could not reach the window without stepping up from the landing onto the raised platform. (Highfield Dep., at 116.)

It is undisputed that the raised platform in front of the shipping window was 62 inches across and 19 inches deep, and that it was 9 inches above the level of the landing. (Doc. 38, at 13; doc. 41, at 6.) The front edge of the raised platform was positioned 33 inches from the top of the staircase, with the landing in between. (Doc. 41-9, at 5.) There was no gate separating the stairs from the landing. (*Id.* at 2-6.) There was no railing around the raised platform. (*Id.*) Thus, to reach the shipping office window at the Grede facility in Brewton, a truck driver was required to climb the ten steps, traverse the first 33 inches of the landing, then step up onto the 9-inch high, 19-inch deep platform. The depth of the raised platform is a key fact, given plaintiff's evidence that if a man whose height was 5'11" and whose weight was 238 pounds stood sideways with his elbow touching the shipping office wall, his outside foot would measure approximately 23 inches from the wall (or 4 inches wider than the depth of the platform). (Peters Dep., at 13, 15-16.) On the day in question, Highfield stood 6'0" and weighed 350 pounds. (Highfield Dep., at 53.) These facts support a reasonable inference that Highfield could not turn around on the platform without his feet protruding over the edge to the landing below.

On the morning of January 16, 2015, Highfield ascended the steps, crossed the landing, and stepped onto the raised platform at the shipping window without incident. Conditions were dry, lighting was good, and there were no environmental factors or medical issues relating to

---

[3] A Grede shipping clerk answered affirmatively when asked in his deposition whether "the only authorized way for a driver to get to you at the shipping office in January of 2015 was to walk up those stairs and get to that window." (Peters Dep., at 38-39.)

Highfield's attire, footwear, vision or health that impeded his ability to reach the window. (Highfield Dep., at 51, 53, 56-57.) When Highfield reached the Grede shipping window, he checked in with the clerk and reached inside the window to sign some paperwork on a small shelf. (*Id.* at 50, 116.) The shipping clerk took Highfield's paperwork, gave him some additional paperwork and notified him of his door assignment for the load that Highfield was picking up that morning. (*Id.* at 50-52.)

Upon completing his business with the shipping clerk, Highfield turned to his right to go back down to his truck. (*Id.* at 116.) As he turned around and took one step in the direction of the stairs, Highfield "lost [his] balance and fell backwards on the steps with [his] leg on the top step and [his] head down." (*Id.* at 51.) During his deposition, Highfield stated that he "couldn't tell you exactly" what happened, but he believes that on his first (and only) step his foot "[s]tepped on the edge" of the raised platform, causing him to lose his balance and fall. (*Id.* at 117-118.) Highfield is not certain that his foot landed on the edge of the platform, but he testified, "I believe that's what happened." (*Id.* at 117.) He took only one step, and then went down. (*Id.* at 118.) What Highfield is uncertain about is whether, on that initial step, his foot landed on the edge of the platform or whether it missed the platform altogether and contacted only empty air, before dropping 9" to the landing below. (*Id.* at 121-22.) Either way, Highfield is clear that he turned to his right on the platform, took just one step and then fell off the platform. (*Id.* at 117-18, 121-22.) As he started falling, Highfield reached for the railing, but was only able to slap it with his hand because the force of the fall prevented him from getting a grip to steady himself. (*Id.* at 107-08.)

Michael Carraway was a shipping clerk on duty for Grede that morning. (Carraway Dep., at 88-89.) Carraway testified that he was looking at his computer when he heard a sound. (*Id.*) Upon looking out the window, Carraway saw that Highfield had fallen. (*Id.* at 89-90.) He observed that Highfield was lying on his back on the stairs, with his head pointed downward and his feet at the top of the steps. (*Id.* at 90-92.) Highfield appeared "shocked, scared." (*Id.* at 92.) Prior to Highfield's fall, Carrraway never apprehended any danger associated with Grede's practice of having truck drivers use the raised platform to step up to the shipping window. (*Id.* at 127.) Similarly, Grede shipping clerk Clint Peters testified that prior to Highfield's fall, he had never known of anyone falling on the stairs and did not perceive any danger in the use of the raised platform to facilitate drivers' access to the shipping window. (Peters Dep., at 36-37.)

Following Highfield's fall, Peters observed him "limping around to his truck." (*Id.* at 41.) Highfield returned to his truck and saw redness and bruising on his calf. (Highfield Dep., at 57.) Over the ensuing weeks, Highfield developed an open wound that actively drained fluid and became infected, ultimately requiring hospitalization and surgery. (Rhinehart Dep. (doc. 41-10), at 17-18, 23-24; Ryan Dep. (doc. 41-11), at 13-19.)

### III. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### IV. Analysis.

In its Motion for Summary Judgment, Grede advances two distinct, independent grounds that it contends entitle it to judgment as a matter of law. First, Grede maintains that Highfield's claims fail for lack of proof of causation. Second, Grede contends that it is entitled to judgment as a matter of law on its affirmative defense that the alleged defect in its premises was open and obvious. Each argument will be examined in turn.

### A. Plaintiff's Evidence of Causation.

As noted, Highfield's claims against Grede are rooted in a theory of premises liability. Fortunately, the Alabama law of premises liability is well settled in pertinent respects. "The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided." *South Alabama Brick Co. v. Carwie*, 214 So.3d 1169, 1176 (Ala. 2016) (citation and emphasis omitted). In the premises liability context, the elements of a negligence claim under Alabama law "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So.2d 649, 651 (Ala. 2002) (citations omitted); *see also Shanklin v. New Pilgrim Towers, L.P.*, 58 So.3d 1251, 1255 (Ala.Civ.App. 2010) ("To recover in a premises-liability action based on a fall, a plaintiff must prove (1) that her fall was caused by a defect or instrumentality located on the defendant's premises, (2) that the fall was the result of the defendant's negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident.") (citations omitted). Causation is thus an essential element of Highfield's causes of action against Grede. *See, e.g., Massey v. Allied Products Co.*, 523 So.2d 397, 398 (Ala. 1988) (in a slip-and-fall case, "[t]he plaintiff must be able to present evidence that his fall was caused by a defect or instrumentality located on the premises"); *Graham v. Wal-Mart Stores, Inc.*, 529 So.2d 938, 939 (Ala. 1988) (in premises liability slip-and-fall case, "proximate cause is a necessary element in proving negligence").

Grede's summary judgment argument on causation is that Highfield "candidly admits that he does not know why he fell off the platform" and that "[a] plaintiff cannot establish a claim by speculating that a non-compliant surface caused a fall." (Doc. 38, at 12.) Grede is certainly correct that a plaintiff in a premises liability case cannot establish causation via mere speculation or guesswork that he fell because of a dangerous condition in the defendant's premises. *See, e.g., Ex parte Harold L. Martin Distributing Co.*, 769 So.2d 313, 315 (Ala. 2000) ("The unavoidable conclusion one must draw from Williams's testimony is that the cause of her

fall is a matter of pure speculation. … But Alabama juries are not permitted to *speculate* as to the cause of an accident.").[4]

Where Grede's causation argument breaks down, however, is in the relationship between Highfield's fall and the specific defects alleged in its premises. Contrary to defendant's position, a fair reading of Highfield's deposition is that he did not testify that "he does not know why he fell off the platform." (Doc. 38, at 12.) To be sure, Highfield did concede that he did not know which leg went first, whether his foot hit the edge of the platform, or whether his foot missed the platform altogether.[5] But such areas of ambiguity are of no consequence for summary judgment purposes. Here is why: Highfield is not alleging that the edge of the platform contained some defect (*i.e.*, a protrusion, a slick/loose surface, or foreign matter on the edge itself) that Highfield

---

[4] *See also Shanklin*, 58 So.3d at 1257 ("In order to prevail against the summary-judgment motions, Shanklin was required to present substantial evidence indicating that the 'misleveled' elevator caused her to fall. The evidence presented, while able to support the conclusion that Shanklin tripped on the 'misleveled' elevator, points just as equally to the conclusion that Shanklin simply stumbled or tripped for no apparent reason. … Shanklin's own testimony was that she did not know if her foot struck anything to cause her to stumble and fall."); *Ervin v. Excel Properties, Inc.*, 831 So.2d 38, 45 (Ala.Civ.App. 2001) ("Although Ervin attributed her fall to an allegedly faulty condition of the steps, her testimony establishes that she was not certain what made her fall. … We cannot say that the evidence supports an inference that a defective condition of Excel's steps caused Ervin's fall."); *Cawthon v. Dolgencorp, LLC*, 2011 WL 814496, *2-3 (S.D. Ala. Mar. 2, 2011) (pointing out that "[t]he plaintiff must offer more than speculation as to what caused his fall in order to survive summary judgment" and deeming plaintiff's showing inadequate where "[t]he plaintiff does not know what caused him to fall and has no witnesses that saw him fall" but simply guessed that defendant's counter caused the fall).

[5] The pertinent excerpts from his deposition read as follows:

"Q: Talk to us about your stepping. How did that work out?
"A: Not very well.
"Q: Which leg went first?
"A: I actually couldn't tell you exactly. I don't know if my foot hit the edge of this upper platform which caused me to lose my balance. I believe that's what happened."

\*     \*     \*

"Q: But as far as where each of your feet landed and whether they were on the edge of the platform or you went all the way down to the next landing, can you tell us sitting here today exactly what happened?
"A: No, I can't."

(Highfield Dep., at 117, 122.)

has no knowledge of whether it contributed to his fall or not.[6] Rather, the defect that Highfield is alleging is that the raised platform was too narrow to accommodate truck drivers turning around and stepping down safely after conducting business at the shipping window.[7] According to Highfield's theory of the case, the injuries he received because of that fall hazard were exacerbated by other defects in Grede's premises, to-wit: the excessive 9-inch drop-off from the platform to the landing below, and the presence of an ungated staircase just 33 inches away from the edge of the platform.

The point is that Highfield's admitted uncertainty about whether his foot struck the edge of the platform or not does not matter because no particular feature of that edge is alleged to be the defect. Highfield theorizes that the platform was too narrow to allow him to maneuver safely from the platform at the shipping window down to the landing and the stairs. Plaintiff's evidence is that he turned around at the shipping window to go back down stairs, took one step, and his footfall either caught the edge of the platform or missed it altogether, causing him to lose

---

[6] In this critical respect, Highfield's case is distinguishable from the Alabama authorities on which Grede relies. *See, e.g., Howard L. Martin*, 769 So.2d at 314-15 (plaintiff alleged certain defects in wheelchair ramp, but "she could not say how – or if – the 'very technical ways' in which the wheelchair ramp was constructed contributed to her accident"); *Shanklin*, 58 So.3d at 1257 (plaintiff alleged that elevator was defective because it was "misleveled," but did not know if the elevator was misleveled at the time of her fall or whether her foot struck the misleveled portion); *Ervin*, 831 So.2d at 45 (plaintiff alleged that steps were defective because they had "loose concrete and protruding metal framing," but she had no evidence and did not know whether her foot hit any such materials to cause her fall); *Cawthorn*, 2011 WL 814496, at *2-3 (plaintiff alleged that premises were defective because a counter protruded into the aisle, but he did not know whether the counter caused him to trip or whether he stumbled on his own).

[7] Highfield's summary judgment submissions could not be clearer that the key defect in Grede's premises on which his claims are based is the installation of a raised platform that was too narrow. (Doc. 41, at 2 ("[T]he platform under the shipping window was too narrow to meet his footfall …. A reasonable jury could find that Highfield's fall while turning to his right was caused by the narrow depth of the platform."), 16 ("his injuries were caused by a combination of the narrow platform, the nine-inch drop as he missed his step, and a gateless staircase only 33 inches from the platform edge").) And Highfield specified in his deposition that he took issue with "[t]he width and depth of the platform. I didn't feel it was big enough. I made that conclusion when I fell." (Highfield Dep., at 106.) There were other alleged defects at Grede's premises, but Highfield's position is that the defect causing his fall was the shallowness of the platform. Therefore, that defect is properly the focal point of the causation analysis on summary judgment.

his balance. Regardless of whether Highfield's foot landed on the edge or not, his evidence is that the particular defect alleged in this case (*i.e.*, the excessively narrow platform) caused him to lose his balance because he could not take a step without going beyond the end of the platform to the landing below.[8] The dangerous condition on Grede's premises was that the raised platform was not deep enough to allow a truck driver to turn around safely from the shipping window to go back downstairs. Under this view of the record, then, had Grede constructed a deeper platform at the shipping window (as plaintiff claims it should have done), Highfield's footfall would have landed squarely on the platform instead of glancing off the edge or catching only empty air, such that he would not have lost his balance and would not have fallen. Plaintiff's showing is adequate to show genuine issues of material fact on the question of causation.[9]

In arguing otherwise, Grede relies on the line of Alabama authorities finding that where a plaintiff's evidence equally supports multiple inferences, only one of which creates liability, the

---

[8] To be clear, the Court makes no findings and expresses no opinions at this time as to whether the complained-of condition on Grede's premises (namely, a 19-inch deep platform to the shipping window, elevated some 9 inches above the landing below) constitutes a defect for purposes of establishing premises liability under Alabama law. Defendant's Motion for Summary Judgment does not challenge the "defect or instrumentality" element of Highfield's negligence claims in the premises liability context; therefore, for summary judgment purposes, the Court assumes (without deciding) that plaintiff has presented sufficient evidence to reach a jury on that element.

[9] In its Reply, Grede suggests that Highfield has improperly "attempt[ed] to shift the focus to other 'defects' not discussed in the Motion." (Doc. 42, at 1.) As already discussed, however, the key defect on which Highfield's claims rest is the allegedly inadequate depth of the raised platform. Other factors (such as the height of the platform above the landing, the inadequate depth of the landing between platform and stairs, and the lack of a gate on the staircase) are alleged to have contributed to Highfield's injuries (*i.e.*, making the fall more serious than it otherwise would have been); however, Highfield has unambiguously staked himself to a theory that he fell because the raised platform was too narrow for him safely to maneuver his way back down to the landing and stairs after finishing his business at the shipping window. This is not a new litigation position; to the contrary, plaintiff articulated a similar theory at least as far back as the Report of Parties' Planning Meeting in October 2016. (*See* doc. 7, at 1 (describing defect as "a small step-up platform on top of the landing," which "platform is narrow, unguarded and in immediate proximity to the unguarded stairs").) In the Amended Complaint, Highfield specifically pleaded that "there was inadequate space for persons such a[s] Plaintiff to maneuver on the platform." (Doc. 15, ¶ 14.) Thus, any suggestion by defendant that plaintiff's briefs are somehow retooling his claims to circumvent summary judgment is not supported by the record.

defendant cannot be found liable.[10] *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala.1987) ("[w]hen evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party, the evidence lacks probative value; and the evidence may not be used to support one inference over another because such use is mere conjecture and speculation").[11] However, those authorities are inapplicable here.

Viewed in the light most favorable to Highfield, the evidence does not equally support multiple inferences, but rather tends to show that plaintiff's fall was more likely caused by a defect in the premises than by some unknown, unexplained reason. Again, the principal defect identified by Highfield is that the platform was too narrow to allow a business invitee safely to turn around from the shipping window and walk back downstairs. Plaintiff's evidence is that after completing his business at the shipping office, he turned and took one step but lost his balance because the platform was not deep enough to accommodate his footfall. It did not extend out far enough to allow him to take even a single step on the platform toward the stairs. Regardless of whether Highfield's foot struck the edge of the platform or missed the platform altogether (and that is the point as to which Highfield expresses uncertainty), his testimony supports a reasonable inference that the defect (*i.e.*, the excessively narrow platform) caused his fall because had the platform been deeper (and therefore not defective) his foot would have landed fully on the platform and he would have maintained his balance. In short, that evidence points to a non-conjectural link between the defective condition and Highfield's accident in a manner that has probative value and does not relegate the issue of causation to a flip of a coin or

---

[10]  Although defendant does not clearly express the divergent inferences supported by plaintiff's facts, presumably they are (i) Highfield fell because of a defect on the premises, or (ii) Highfield simply lost his balance for unexplained reasons that were "idiopathic and not the result of any fault by Grede." (Doc. 42, at 2.)

[11]  *See also Brookwood Medical Center v. Lindstrom*, 763 So.2d 951, 956 (Ala. 2000) ("evidence that equally establishes the possibility that Lindstrom slipped out of a properly secured wrist restraint and the possibility that she escaped from an *im*properly secured wrist restraint does not constitute substantial evidence of a breach of the standard of care"); *Dodd v. GlassRatner Management & Realty Advisors, LLC*, 2017 WL 3581723, *2 (N.D. Ala. Aug. 18, 2017) ("When evidence gives rise to equally plausible inferences regarding the existence of a dangerous condition, the evidence is impermissibly speculative."); *see generally Bell v. Colony Apartments Co.*, 568 So.2d 805, 810 (Ala. 1990) ("[T]he mere possibility that a careless act caused damage is not itself sufficient to find proximate cause.") (citation omitted).

unvarnished guesswork. The cases cited by Grede for the contrary proposition are all distinguishable on this basis.

In so concluding, the Court is guided by the following principles of Alabama law:

> "Merely because the same factual premise will support more than one inference does not of itself render the proffered evidence conjectural or speculative. … It is only where evidence points equally to inferences both favorable and unfavorable to the moving party that it lacks probative value; and its use … becomes mere conjecture and speculation. But where evidence reasonably tends to support inferences favorable to the moving party, more than those unfavorable to that party, such evidence has probative value and is not conjecture or speculation."

*Springfield Missionary Baptist Church v. Wall*, 993 So.2d 469, 476-77 (Ala.Civ.App. 2008) (citation omitted). Such is the case here. While Highfield's evidence does not conclusively rule out other possible causes of his fall, no such showing is required on summary judgment. A plaintiff's evidence is not speculative as long as it "points to any one theory of causation, indicating a logical sequence of cause and effect, … notwithstanding the existence of other plausible theories with or without support in the evidence." *Southern Ry. Co. v. Dickson*, 100 So. 665, 669 (Ala. 1924); *see also Dixon v. Board of Water & Sewer Com'rs of the City of Mobile*, 865 So.2d 1161, 1166 (Ala. 2003) ("a theory of causation is not mere conjecture, when it is deducible as a reasonable inference from known facts or conditions") (citation and internal quotation marks omitted). Plaintiff's showing satisfies this standard.

For these reasons, plaintiff's evidence demonstrates the existence of genuine issues of material fact as to whether the alleged defects in defendant's premises caused his fall. He has presented sufficient evidence that, taken as true, would establish a logical sequence of cause and effect and support a reasonable inference that Highfield fell because Grede's premises were defective in that the platform abutting the shipping office was too shallow. Defendant is not entitled to summary judgment on its assertion that the record lacks sufficient evidence of causation.[12]

---

[12] The Court finds it unnecessary and unhelpful at this time to address the parties' protracted disagreements concerning the opinions of plaintiff's architectural expert, Peter Combs. Specifically, plaintiff pointed to Combs' opinions about the existence of "regulatory defects" in the platform and Combs' assessment that the platform should have been 36 inches in depth. (Doc. 41, at 6, 13, 20.) Defendant responded by criticizing these opinions as mere *ipse dixit* or otherwise irrelevant or inadmissible under *Daubert* principles. (Doc. 42, at 11-13; doc. 46, at 3.) The Court declines to issue a *Daubert* ruling on this fragmentary briefing of the issues, (Continued)

### B. The "Open and Obvious" Affirmative Defense.

The second independent ground for defendant's Motion for Summary Judgment is the "open and obvious" defense. In seeking relief on that basis, Grede reasons that (i) "when a condition on a premises is open and obvious, the premises owner has no duty either to remove the condition or to warn invitees;" and (ii) "[i]f a plaintiff falls from a … platform … that he mounted seconds before[,] he is charged with objective appreciation of the risk." (Doc. 38, at 18-19.) Plaintiff responds that genuine issues of material fact preclude granting summary judgment for defendant on this affirmative defense.

The appropriate analytical starting point is the "open and obvious" doctrine. It is well-settled in Alabama that "[t]he [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious." *Jones Food Co. v. Shipman*, 981 So.2d 355, 362 (Ala. 2006) (citations omitted). Indeed, "[t]he entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, ***as when the danger is obvious***, the invitor cannot be held liable." *Id.* (citations omitted and emphasis added); *see also General Motors Corp. v. Hill*, 752 So.2d 1186, 1187 (Ala. 1999) ("It is well established, however, that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. ***If the danger is open and obvious, the invitor cannot be held liable.***") (citations omitted and emphasis added). To ascertain whether a particular dangerous condition qualifies as "open and obvious," Alabama jurisprudence emphasizes that "[i]n a premises-liability setting, we use an objective standard to assess whether a hazard is open and obvious. … [T]he question is whether the danger should have been observed, not whether in fact

---

and agrees with plaintiff that "the opinions of plaintiff's architectural expert are not necessary to prove causation." (Doc. 43-1, at 5.) It appears to the undersigned that Combs' opinions go primarily to the issue of whether or not there was a defect on the Grede premises. (After all, Combs is not a biomechanical expert, a human factors expert, or a fall reconstruction expert, and would therefore appear ill-equipped to offer expert analysis or opinions as to the precise reasons why Highfield lost his balance.) Because defendant's Motion for Summary Judgment is not grounded in a theory of "no defect," the parties' dispute over the admissibility of Combs' opinions as to the existence *vel non* of such a defect need not be resolved at this time. Should it become necessary to do so, the parties will be afforded an opportunity to raise and brief *Daubert* issues via separate motion prior to trial.

it was consciously appreciated." *Dolgencorp, Inc. v. Taylor*, 28 So.3d 737, 741-42 (Ala. 2009) (citations omitted); *see also South Alabama Brick*, 214 So.3d at 1177 ("[T]he duty of a premises owner is measured by an objective standard, not the subjective state of the invitee's knowledge. The question is what was objectively reasonable for the invitor to expect the invitee to know. … [A]n invitor's duty before an accident is not determined by 'the invitee's subjective state of mind' at the moment of the accident.") (citations omitted); *Waters v. Paul Enterprises, Inc.*, 130 So.3d 1220, 1223 (Ala.Civ.App. 2013) ("under Alabama law the issue whether a condition is open and obvious is analyzed under an objective standard").

Thus, if the allegedly dangerous condition on Grede's premises was open and obvious, then Grede cannot be liable for Highfield's injuries. Applying the above-described test, the question is whether it was objectively reasonable for Grede to expect Highfield to know that the shallowness of the platform in front of the shipping window created a fall hazard when the invitee turned around to walk back downstairs. Grede argues that this question should be answered affirmatively because Highfield had mounted the platform "seconds before" and is therefore "charged with objective appreciation of the risk." (Doc. 38, at 19.) The Court is not persuaded that the analysis is so cut and dried.

Alabama courts have been circumspect about granting summary judgment to defendants in premises liability cases based on the "open and obvious" defense. *See, e.g., Ex parte Kraatz*, 775 So.2d 801, 804 (Ala. 2000) ("Questions of openness and obviousness of a defect or danger and of an [invitee's] knowledge are generally not to be resolved on a motion for summary judgment.") (citations omitted).[13] And of course, whether a condition is open and obvious is an affirmative defense, as to which Grede bears the burden of proof, such that summary judgment is

---

[13] *See also Barnwell v. CLP Corp.*, --- So.3d ----, 2017 WL 1422478, *5 (Ala. Apr. 21, 2017) ("[t]he question whether a danger is open and obvious is generally one of fact") (citations omitted); *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1195 (Ala. 2002) ("Whether a condition is open and obvious is generally a question for the jury."); *Waters*, 130 So.3d at 1225 (reversing trial court's entry of summary judgment in favor of premises owner where "there was a genuine issue of material fact as to whether a danger that even [the premises owner] had not observed over the four-year period it had used the metal plates was an open and obvious danger"); *Howard v. Andy's Store for Men*, 757 So.2d 1208, 1211 (Ala.Civ.App. 2000) ("The question whether a danger is open and obvious is generally one of fact. … [T]he plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury.") (citations and internal quotation marks omitted)

not proper unless Grede's own submissions entitle it to judgment as a matter of law. *See, e.g., Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194-95 (Ala. 2002) ("Mercantile's argument that the condition that caused Mrs. Denmark's fall was open and obvious is an *affirmative defense*, on which it bears the ultimate burden of proof. … The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.") (citations and internal quotation marks omitted).

Viewing the record evidence most favorable to plaintiff (as we must for summary judgment purposes), there are genuine issues of material fact as to the openness and obviousness of the alleged defects at the Grede property. Defendant's employees testified that, prior to Highfield's fall, they never perceived the raised platform (which had been there for four years) to pose a danger for visiting truck drivers. (*See* Carraway Dep., at 127; Peters Dep., at 36-37.)[14] Defendant's expert opined that he saw nothing about the platform that he would consider to be unsafe. (Doc. 43-1, at 16, 18-19.) To be sure, Grede is correct that Highfield must have been aware that the platform was elevated from the landing because he had stepped up onto the platform just seconds earlier. But it is for a jury to decide whether a reasonable invitee visiting the Grede facility for the first time should have noticed and appreciated how shallow the platform in front of the shipping window was, how limited the space on the platform was for maneuvering around, and the concomitant need to exercise caution in turning to go back downstairs because of the platform's lack of depth.

What would have been open and obvious to Grede's business invitees was that they must use the stairs, landing and raised platform to reach the shipping window, just as Highfield had done before he stepped from the platform toward the landing, lost his balance and fell. But would it have been open and obvious to a reasonable invitee that the platform was so shallow as to pose a dangerous condition when the invitee turned around to step down? The Court cannot say with anything approaching certainty. Neither Grede's employees at the shipping window nor

---

[14] Alabama courts have confirmed that, even with the objective test for "open and obvious," a defendant's agent's lack of appreciation of danger weighs against entry of summary judgment on that affirmative defense. *See Waters*, 130 So.3d at 1225 (reversing summary judgment in favor of defendant on "open and obvious" defense where plaintiffs "presented substantial evidence demonstrating that there was a genuine issue of material of fact as to whether a danger that even [defendant] had not observed … was an open and obvious danger").

Highfield himself saw or appreciated that danger. And to point out (as defendant does) that Highfield should have been aware that he would have to step down from the platform is not to conclude that Highfield should have appreciated how little room there was to maneuver on that platform because its shallow dimensions, which is the relevant inquiry.[15] Thus, Grede's proof as to the openness and obviousness of the danger posed by the 19" depth of the platform is not so compelling that its own submissions entitle it to judgment as a matter of law. Summary judgment will not be granted to defendant on its "open and obvious" affirmative defense.

**V.     Conclusion.**

For all of the foregoing reasons, defendant's Motion for Summary Judgment (doc. 37) is **denied**. This action remains set for a Final Pretrial Conference before the undersigned on **January 16, 2018 at 9:00 a.m.**, with jury trial to follow in the **February 2018** civil term.

DONE and ORDERED this 16th day of November, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[15]     In this regard, the facts viewed in the light most favorable to Highfield are readily distinguishable from those in *Cirlot v. Waffle House, Inc.*, 2012 WL 4479234 (N.D. Ala. Sept. 20, 2012), a decision championed by Grede. In *Cirlot*, the plaintiff's decedent had stepped up from the parking lot, over a curb and onto the sidewalk in front of a restaurant, only to back up and fall off the curb moments later. In granting summary judgment to the defendant, the *Cirlot* court reasoned that "[i]t is obvious that a person who has stepped up from the street to the sidewalk … would be aware that stepping back presented a danger that one would suffer a fall." *Id.* at *5. The defect on the premises in *Cirlot* was the height differential from the street to the sidewalk. By contrast, the critical defect in the case at bar is not the height differential between landing and platform, but the alleged lack of sufficient space for a person standing on the platform at the shipping office window to turn around and maneuver back down to the landing safely. That is an entirely different issue. No one disputes that Highfield was (and reasonably should have been) aware that the platform was elevated above the landing. But what _is_ in dispute is whether Highfield reasonably should have been cognizant of just how shallow that platform was and how little space there was for him to turn around from the shipping window and navigate his way back down to the landing. That question is entirely dissimilar from the one presented in *Cirlot*, and warrants a finding that genuine issues of material fact preclude summary judgment in defendant's favor on the "open and obvious" defense.